IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL E. STEWART** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:06CV187-LG-JMR** |
| | § | |
| **J.E. BORRIES, INC.** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER DENYING

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THIS COURT is J.E. Borries, Inc.'s Motion for Summary Judgment [27], filed June 19, 2007. The sole issue before the Court is whether Michael E. Stewart was a seaman for purposes of the Jones Act. The Court has considered the parties' briefs, the record, and the relevant legal authority. Because there is a genuine issue of material fact concerning Stewart's seaman status, the motion is denied.

### FACTS AND PROCEDURAL HISTORY

During November and December of 2003, Borries was constructing a residential pier and boathouse in the Back Bay of Biloxi. Employed for this purpose was one of the company's tug boats, M/V THE TWO BIGGUNS, an eighty-foot crane barge, a forty-foot materials barge, and a twenty-foot floating work platform. The tug boat and crane barge were located on the east side of the construction, and the materials barge was located on the west side. The floating platform was to the south. From time to time, the tug boat had to transport the barges from the work site, and down the Back Bay in order to retrieve more materials for the project.

Borries hired Stewart to work on this project, and he started December 3, 2003. Although Stewart had worked off and on for Borries since at least 1999, this was his first day on this

particular project. Prior to 1999, he had worked full time for Borries. Among other things, Stewart's job on this project included driving pilings with the air compressor located on the crane barge. At one point Stewart and his brother James Stewart were ordered to attach the materials barge to the construction by tying boards on the barge and nailing them to the construction. While on the materials barge moving a large board for this purpose, Stewart claims he injured his back. As a result, Stewart was not able to work on the remainder of the project.

Stewart filed this action, seeking relief under the Jones Act. Borries now moves for summary judgment and argues that Stewart was not a seaman.

## DISCUSSION

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

The Jones Act provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 351 (1995). Whether someone is a Jones Act seaman is a mixed question of law and fact. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991). "The jury finds the facts, and . . . applies the legal standard." *Id.* If reasonable persons could differ as to whether a person is a seaman, it is a question for the jury. *Id.* A seaman is not required to aid in navigation or contribute to the transportation of the vessel. *Id.* To qualify as a seaman, (1) the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission," and (2) the employee must have a connection to a vessel or identifiable group of vessels in navigation that is substantial in terms of both its duration and nature. *Chandris*, 515 U.S. at 368.

Borries concedes that the tug boat and barges are vessels in navigation. Likewise, it does not argue that Stewart's duties did not contribute to the function of the vessels or the accomplishment of their mission. Borries does argue that Stewart was not a seaman because he did not have a substantial connection to the vessels. Borries challenges both the nature and duration of Stewart's connection. Stewart responds there is a genuine issue of fact as to whether he was substantially connected to the vessels.

    I.    NATURE OF STEWART'S CONNECTION TO THE VESSELS

Borries argues that the nature of Stewart's connection to the vessels was not substantial, because he also worked as a disc jockey three nights a week, and his title on the December 3 project was "laborer." Although it acknowledged that Stewart worked as a deck hand for Borries in the past, it says for this particular assignment he was a land-based construction worker. In examining the nature of Stewart's connection, the Court does not consider his job title, but rather

3

his actual duties. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 558-59 (1997). Even his actual duties are but one factor. *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000). The Court must consider his connection "in actual fact to vessel operations." *Harbor Tug*, 520 U.S. at 559. Thus a paint foreman, ship repairman, and a crane operator may qualify for seaman status. *S.W. Marine, Inc. v. Gizoni*, 502 U.S. 81, 92 (1991); *McDermott International*, 498 U.S. at 355; *Endeavor Marine*, 234 F.3d at 292. "The inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Harbor Tug*, 520 U.S. at 555. In other words, a seaman is a "sea-based maritime [employee] whose work regularly exposes [him] to the 'special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Endeavor Marine*, 234 F.3d at 291-92 (quoting *Chandris*, 515 U.S. at 369-70).

For example, in *Harbor Tug*, the Court held a ship painter's connection to a vessel was not substantial in nature. *Harbor Tug*, 520 U.S. at 559. This was because his duties with the employer were always performed dockside and he was never required to sail with the vessel. *Id.* Moreover, he reported to the port captain. *Id.* at 551. The Court noted, "This is not a case where the employee was hired to perform seagoing work during the employment in question, however brief, and we need not consider here the consequences of such an employment." *Id.* at 559.

The Fifth Circuit examined a case where the sole question was whether a crane operator's connection to a barge was substantial in nature. *Endeavor Marine*, 234 F.3d at 291. The crane operator was assigned to the FRANK L, a derrick barge which loaded and unloaded cargo ships on the Mississippi River. *Id.* at 292. He sustained an injury while a tug boat was pushing the FRANK L alongside a cargo ship that the barge was to unload. *Id.* at 289. He was aboard the barge waiting to assist in mooring it at the time. *Id.* The mooring line of another derrick barge, the AGNES,

4

snapped and struck the crane operator in the leg. *Id.* The district court found his connection to the barge was not substantial in nature, because "it did not take him to sea. His work brought him aboard the barge only after the vessel was moored or in the process of mooring." *Id.* at 291. The Fifth Circuit reversed. It found that the employee's "primary responsibility was to operate the cranes on board a vessel whose sole purpose is to load and unload cargo vessels." *Id.* at 292. Additionally, the employee was "regularly exposed to the perils of the sea." *Id.* The Fifth Circuit held the crane operator was a seaman as a matter of law. *Id.*

These cases are instructive, because there is evidence that Stewart had even a stronger connection to the vessels in this case. Stewart and James testified in their depositions that Stewart reported to work at Debussey's Landing, on the Back Bay in Biloxi. He and the other members of the crew boarded the tug boat and pushed the crane and materials barges down the Back Bay to the work site. Stewart testified he performed various deck hand duties, which included making sure the cables were tight, checking the oil, packing around the shaft, firing off the engines for the trip, and pulling up the spuds. The trip took approximately thirty minutes. Once at the site, the tug boat positioned the crane barge, and Stewart assisted in spudding it down and breaking the tug loose. Then the tug boat moved the materials barge to the other side of the construction, and Stewart helped to position it and spud it down. The tug boat then returned to the crane barge, and the crew began working on the construction project. The crane operator and supervisor Mike Clancy testified that the barges were necessary in order to perform the construction. Stewart operated the pile driver on the crane barge. No one was assigned to the materials barge. Rather Stewart and the others were required to go between the two barges. He testified that he spent greater than fifty percent of his time on the crane barge.

Right before he was injured, he and James were instructed "to set up a frame, basically, to

align the pilings." The crane on the crane barge would reach over and pick up a piling from the materials barge. The frame was to give "the pilings something to rest against" as they were being driven down into the water. To set up the frame, he and James had to set up boards to go from the pier construction to the materials barge. He testified:

> We set up the boards first. We had two of them coming from the material barge to the pier. They nailed the ends that was on the pier, nailed them to the pier so they wouldn't move back and forth. We had to set up a third one, the third board, we run long ways on the barge, attached them–nailed them to the other board, the two boards.
> We tied the two ends of those in to make the grid with the third barge–I mean, with the third board on the barge. . . .
> It was in the process of getting this third board out that the injury occurred.

Consistent with *Endeavor*, this is evidence from which a reasonable jury could conclude that the nature of Stewart's connection to the tugboat, crane and materials barges was substantial. There is evidence he performed traditional sea-faring activities of contributing to the transportation of the vessels. He also unloaded and made ready the materials barge, which provided materials to the construction site. He operated the pile driver from the crane barge, which was used to construct the pier. Finally, his duties subjected him to the perils of the sea.

II.     DURATION OF STEWART'S CONNECTION TO THE VESSELS

The *Chandris* court explained the duration element of the test by stating, "A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based . . . regardless of what his duties are." *Id.* at 371. "[S]ubstantiality in this context is determined by reference to the period covered by the . . . plaintiff's maritime employment." *Id.* The rule of thumb is that a worker who spends less than thirty percent of his time in service of a vessel should not qualify as a seaman. *Id.*

First, it is undisputed that Stewart had worked for Borries off and on for ten years. During

this time with Borries, Stewart testified that most of his duties included typical "deck hand" duties, where he assisted on tugboat voyages. On the accident report, a Borries representative listed April 18, 2003, as Stewart's date of hire. Stewart testified that in 2003, his work for Borries was over eighty-five percent on such trips. In November of 2003, just prior to the project at issue, Stewart was hired by Borries to work for Kevin Borries hauling dirt on a tugboat. Stewart testified that on the project at issue in this case, he spent over fifty percent of his time working on the crane barge. The rest of his time was spent on the tug boat, materials barge, or on the pier construction itself.

Nevertheless, Borries restricts the relevant time period to this particular assignment, and argues that Stewart's one day of work on this project is not enough to create a substantial connection to the vessels. The general rule is that the entire employment history with a particular employer is analyzed. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 388-89 (5th Cir. 2003). *See also*, *Harbor Tug*, 520 U.S. at 556-57. An exception to this rule is "[i]f a maritime employee receives a new work assignment *in which his essential duties are changed*, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Chandris*, 515 U.S. at 372 (emphasis added). The Fifth Circuit has interpreted this "new assignment" exception to mean that it is the employee's status that must substantially change, not the assignment. *Becker*, 335 F.3d at 389.

Assuming arguendo that the jury would be restricted to considering only the December 2003 assignment, the Court finds a genuine issue of fact remains as to whether Stewart's connection was of a substantial duration. In *Foulk v. Donjon Marine Co.*, 144 F.3d 252 (3d Cir. 1998), the Third Circuit examined whether a diver who was injured on the first day of the job had an insufficient duration as a matter of law. The diver had worked for only half a day when he was injured. *Id.* at 259. The court held it "must consider his intended relationship, as if he had

completed this mission uninjured." *Id.*  The evidence was undisputed that the diver's arrangement with the employer called for ten days' work.  *Id.*  The court held, "The fact that he was only going to do it for 10 days does not, by itself, mandate summary judgment.  Ten days is not a 'clearly inadequate temporal connection . . . sufficient to take the question from the jury. . . .'"  *Id.* at 260 (citation omitted).  Moreover, the contemplated number of days was but one factor for the jury to consider in assessing the connection.  *Id.*

Stewart testified that Borries asked him "to help out on this job," but did not specify how long it would last.  James testified that the project exceeded an additional one to two weeks after December 3.  Stewart estimated that the job would last an additional two to three weeks.  This evidence precludes the Court from taking the question of duration from the jury.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, the Defendant's Motion for Summary Judgment is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 4th day of October, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE